**EASTERN OKLAHOMA TELEVISION COMPANY, Inc., Plaintiff in Error,**

v.

**M. L. HART and Dorothy Hart, Defendants in Error.**

**No. 41609.**

Supreme Court of Oklahoma.

April 9, 1968.

Rehearing Denied June 4, 1968.

Deaton & Gassaway, Ada, for plaintiff in error.

A. W. Trice, Ada, Philip D. Hart, Oklahoma City, for defendants in error.

LAVENDER, Justice.

This action was commenced in the District Court of Pontotoc County by the plain-

tiff in error for specific performance of an option to purchase a building located on land leased by the plaintiff to the defendants and, with the building in question constructed thereon by the defendants, leased by the defendants to the plaintiffs in accordance with the option provisions of the lease agreement.

This appeal, which is by case-made, involves the judgment rendered in the cause on January 6, 1965, and a "supplemental" judgment rendered on February 3, 1965, and the separate orders overruling separate motions for a new trial, aimed at the respective judgments, made on February 3, 1965.

We are first confronted with a contention, first made in the answer brief of the defendants in error who were the defendants in the trial court, that this court is without jurisdiction of the appeal for two reasons: First, because the case-made was not settled, certified and signed by the judge who tried the cause or by his successor in office; and second, because the case-made and petition in error were not filed in this court within the time prescribed therefor in the last order made under the provisions of 12 O.S.1961, § 962.

We have determined that such contentions are without merit, but because of the disposition of this cause on the merits as hereinafter set forth, we deem it unnecessary to burden this opinion with our reasons for denying the motion to dismiss.

The option involved herein is included in a written instrument, denominated "Lease Agreement," entered into, under date of September 10, 1953, by and between the defendant M. L. Hart (but also signed by the other defendant, Dorothy Hart), as party of the first part, and the plaintiff, Eastern Oklahoma Television Company, Inc., as party of the second part, by the provisions of which, the second party (as the holder of a 99-year lease covering a larger tract of land) leased to the first party for a term of 40 years a certain tract of land in Pontotoc County, and the first party agreed to construct on that tract, in accordance with plans and specifications attached to the instrument, a building to be known as a television building, and leased the building to the second party for a term of 40 years commencing thirty days after completion of the building or on the first day of operation of the television station, whichever be earliest.

In addition to the option involved herein, this lease agreement also contained provisions concerning the rent to be paid by second party for the building, under which the basic monthly installments of rent provided for therein (which were in addition to $5,000.00 advance rentals covering the first six months of the rental period and the last four months of the rental period) were to be adjusted, after completion of the building, in accordance with the cost of construction of the building. To effect this adjustment, a supplemental agreement was entered into under date of May 15, 1954, between M. L. Hart and his wife, Dorothy Hart, as party of the first part, and the television company, as party of the second part, in which it was agreed that the basic monthly rental to be paid by the company "shall be based upon the final construction cost of the building in the total amount of $46,200.00, less $5,000.00, or $41,200.00, at 5% interest per annum for 9 years and 2 months, or a monthly rental of $468.29, payable as set out in the original contract."

The lease agreement granted to the second party the option "to enter into negotiations to buy the building as originally constructed during the last six months of the tenth year, with the purchase being consummated at the end of the tenth year," with the lease to end as of the date of the purchase, and the second party was granted the same option at the end of each five-year period after the first ten years. In this connection, the lease agreement provided for the purchase price to be determined by an appraisal, with the first party to appoint a competent appraiser who is familiar with construction of buildings of this type, the second party to appoint another person

familiar with the construction of buildings of this type, and the two persons so appointed to appoint, as the third appraiser, a person familiar with the construction of buildings of this type, and the first party agreed to accept the price fixed by them.

The lease agreement also provided that "said appraisers must consider only the fair, reasonable cash market value of the building, taking into consideration reasonable wear, tear and depreciation during the period of time the building has been built;" that the appraisal is to be based entirely on the building as originally constructed, without any additions attached thereto, and the appraisers are not to consider its "use" or any improvements placed thereon or therein; and that "the appraisers are not to consider the fact that second party has paid the rent upon the building up to that time, for the reason that said rent in no event is to be considered a payment on the purchase price of the building."

The plaintiff alleged, and the defendants admitted, the lease agreement and supplement thereto; that the term of the lease commenced on April 15, 1954, and the last six months of the tenth year of the term commenced on October 15, 1963; and that on October 22, 1963, the plaintiff advised the defendants by certified mail delivered on October 23, 1963, that it intended to exercise its option to purchase the building, and requested that the defendants appoint their appraiser. It is undisputed that the defendants did appoint an appraiser on or about April 5, 1964, and upon being notified of that appointment, the plaintiff appointed an appraiser and on April 15, 1964, those two appraisers appointed a third appraiser; that the three appraisers, so appointed, met on April 20, 1964, for the purpose of appraising the building; that after discussing the problem at length, they informed the plaintiff and defendants that they were unable to reach an agreement as to the value of the building, and with the consent and approval of the plaintiff and defendants, they terminated their consideration of the matter; that the parties were unable to

agree on the reasonable, cash market value of the building, and on or about May 1, 1964, the defendants informed the plaintiff that, in their view, the option to purchase the building during the first ten-year period had to be exercised and the sale consummated on or before April 15, 1964, and that, therefore, that option had expired. On May 8, 1964, the plaintiff filed its petition alleging the foregoing and other facts and prayed that the court determine the fair market value of the building as of April 15, 1964, and direct the defendants to convey title thereto to the plaintiff upon receipt of payment of such sum.

The defendants filed an answer and cross petition in which they denied that, at the time of filing its petition, the plaintiff was entitled to specific performance under the first option because it had to be exercised, and the sale consummated, during the last six months of the first ten year period of the lease and had expired on April 15, 1964; and, based thereon, the defendants prayed for judgment against the plaintiff for the April 15, 1964, and subsequent monthly installments of basic rentals due under the lease, at $468.29 each month, in the total amount, at that time, of $2,809.74, with interest at six per cent per annum on each installment from its due date.

The cause was tried to the court without a jury on December 21 and 22, 1964, and the court took the matter under advisement until January 6, 1965. On that date the court rendered its judgment that the reasonable cash market value of the property was $29,-221.00; that the plaintiff have thirty days from that date within which to exercise its option to purchase the property by paying that amount to the defendants; and that, in the event the plaintiff failed or refused to so exercise its option, then on motion of the defendants judgment would be rendered in favor of the defendants and against the plaintiff for the rentals due under the contract at the rate of $468.29 per month, commencing as of April 15, 1964, together with interest at the rate of six per cent per an-

num on each installment of rent and the costs of the action.

Plaintiff filed a motion for a new trial and it came on for hearing on February 3, 1965, at which time the defendants objected to the court's passing on the motion because the thirty-day period allowed the plaintiff to exercise the option provided in the judgment of January 6, 1965, had not expired and they wanted to move for judgment for the monthly rentals if and when that period expired without exercise of the option. Whereupon, the plaintiff's attorney informed the court that it did not intend to exercise the option to purchase at the price fixed by the court but intended to appeal to this court if its motion for a new trial be overruled, and so that the defendants could move for judgment for the monthly rentals, waived the remainder of the thirty day period allowed by the court for the exercise of that option. The trial court overruled the plaintiff's motion for a new trial. The defendants then moved for judgment for the monthly rentals and the trial court rendered judgment in favor of the defendants and against the plaintiff for the $468.29 monthly installments of rent due as of the 15th day of each month, from April 15, 1964, through January 15, 1965, with interest on each installment, at the rate of six per centum per annum, from the date thereof until paid, and for the costs of the action. The plaintiff immediately attacked that judgment by a motion for a new trial, which was overruled on the same date, February 3, 1965.

The plaintiff appeals to this court with respect to both judgments but makes no attack on the money judgment of February 3, 1965, except to the extent that it is based on the judgment of January 6, 1965.

The plaintiff's first proposition is that the judgment of the trial court determining the market value, and purchase price, of the building involved to be $29,221.00 is not sustained by sufficient evidence and is contrary to law.

Plaintiff argues that because of the limitation in the agreement that the ap-

praisers, in arriving at the purchase price, should not consider the use of the building or the rent paid by the plaintiff, the parties must have agreed that the appraisers were to establish the value based upon the rent-producing capability of the building for its highest and best use for purposes other than as a television broadcasting studio. Applying this reasoning then, plaintiff urges that the three estimates of market value established by its witnesses, namely, $13,500.00, $15,000.00, and $17,000.00 were correct and that the trial court's judgment of $29,221.00 was error. The estimates of value testified to by plaintiff's witnesses were based on what the building, as it was originally constructed, would have produced in income as a storage warehouse for the storage of personal property. Considering the distance of the building from any business center and the fact that (as the evidence shows) there were plenty of other more conveniently located buildings suitable for the same purpose and which were vacant and unused at the time of trial, it is not surprising that the estimates of value were as testified to by the plaintiff's witnesses.

The plaintiff's argument that the use of the building for purposes other than as a television studio was to be the criteria for establishing the price for which the building could be purchased by the plaintiff is best considered by referring to the contract itself and in particular to the following provision:

" * * * The appraisal to be based entirely on the building above set forth without any additions attached thereto, if any, and appraisers are not to consider its use or any improvements placed thereon or therein. The appraisers are not to consider the fact that second party has paid the rent upon the building up to that time, for the reason that said rent in no event is to be considered a payment on the purchase price of the building, but that *said appraisers must consider only the fair, reasonable cash market value of the building, taking into consideration reasonable wear, tear and depreciation dur-*

*ing the period of time the building has been built * * *"* (Emphasis supplied)

Considering the location of the building and the obvious fact that it was constructed for a special purpose, namely that of a television studio, and that its value for any other purpose would be very minimal compared with its original cost (which was in excess of $46,000.00), we do not consider it unusual that the parties would agree that in arriving at a value (which would be fair to both parties) the parties would limit their appraisers to a consideration of what such a building "as originally constructed", would cost to replace at the current prices and then to deduct therefrom a reasonable allowance for "wear, tear and depreciation". Neither do we consider it unusual that the parties would wish to expressly exclude from consideration by the appraisers the use to which the building could be put as well as the rentals paid by the plaintiff during its tenancy. The reason for expressly excluding consideration of the use and rentals was, we think, to more clearly emphasize the exclusive basis for arriving at the reasonable cash market value of the building.

The plaintiff argues that the term, "reasonable cash market value", has a definite meaning and means the price which a willing seller would accept and a willing buyer would pay at a voluntary sale. It may be that if the above emphasized portion of the contract had been omitted from it, plaintiff's argument might have substance, but here the parties themselves agreed that the appraisers would take into consideration "reasonable wear, tear and depreciation" during the period of time the building has been built. Such consideration on the part of the appraisers would necessarily require a "starting" value—obviously the cost of reproducing such a building. We are further strengthened in our conclusion by the contract provision requiring the appraisers to be familiar with construction of "this type" building and by the fact that the building "as originally constructed", was to be the subject of the appraisement.

Under the testimony of various expert witnesses it was developed that there are three different, but generally accepted approaches to appraising a building. One, the comparison approach, in which the appraisal is based upon recent, comparable voluntary sales of similar buildings; secondly, the investment approach which involves a determination of the net annual rental value of the building and a capitalization of the income over the remaining useful life of the building; and thirdly, the cost-of-replacement-less-depreciation approach.

 We are of the opinion that the parties agreed to limit the appraisers (and the trial court) to the replacement cost less depreciation and the use of the building was not to be considered for the purpose of fixing the value of the building. There is nothing that prohibits parties to such a contract from agreeing upon one (or a combination of two or three) of the accepted methods of appraising property and to agree to be bound by whatever such method establishes as the value.

The contract requirement that the appraisers take into consideration "reasonable wear, tear and depreciation during the period of time the building has been built" rules out the comparison approach and the investment approach, in which an amount for depreciation is not a separate factor, although the age of the building and whether or not it had been well maintained might be considered to some extent in making the necessary adjustments when the comparison approach is used.

In making their estimates of market value of the building as $13,500.00, $15,000.00 and $17,000.00, respectively, each of the three expert witnesses for the plaintiff used the investment approach, which, as we have seen, did not comply with the requirements of the lease agreement. Therefore, the trial court did not err in not fixing the market value, and purchase price, of the building at $13,500.00 or $17,000.00, or at some amount in between those two figures, as the defendants contend the trial court had to do

in order for its judgment to be supported by the evidence and not be contrary to law.

Three expert witnesses testified for the defendants. Their estimates of the market value of the building were $40,000.00, $42,-750.00, and $44,407.00, respectively. Their estimates were based, primarily, upon their estimates of the cost of replacing the building, less depreciation at a rate commensurate with their estimates of the useful life of such a building, but also involved, to some extent, use of the building as a television studio and station (as the only use for which it was adapted in that location) or the monthly rental being paid by the plaintiff, or both.

On cross examination, one of the plaintiff's expert witnesses testified that if he were appraising the building on the basis of cost of replacement less depreciation, he would estimate the cost of replacement at $50,400.00 and would have applied three different types of depreciation, in a stated amount for each type, $10,080.00 as "physical" depreciation, $18,000.00 for "economic" obsolesence (which is based upon capitalized loss of rental value because of location and, therefore, would not be proper under this lease agreement), and $7,560.00 for "functional" depreciation, or remodeling, if the building were to be used as a warehouse or storage facility instead of as a television studio and station (which would not be proper under the lease agreement) or total depreciation of $35,640.00, and on that basis would estimate the market value as $14,760.00. However, it is noted that if the two improper items of depreciation be disregarded, depreciating the $50,400.00 cost of replacement by the $10,080.00 "physical" depreciation would make the market value $39,320.00—some $10,099.00 more than the market value, or purchase price, as fixed by the trial court.

The defendants' three expert witnesses estimated the cost of replacing the building at $47,506.00, $54,720.00, and $59,209.00, respectively, and based upon their estimates of the useful life of such a building, 1% or 1.5%, or 2.5% per year, or 10%, 15%, or 25% for 10 years, would be a reasonable rate of depreciation to be applied against the cost of replacing the building. One of the plaintiff's expert witnesses who did not make an estimate of the cost of replacing the building testified that if he were appraising the building on a cost-less-depreciation basis, he would, based upon his estimate of the useful life of such a building, use a depreciation rate of 3% per year, or 30% for ten years.

Under the evidence concerning the cost of replacing this building and reasonable allowances for depreciation for a period of ten years—even under the testimony of one of the plaintiff's witnesses—the trial court could have found that the value of the building, just as a building, on the basis of cost of replacement less reasonable depreciation for a period of ten years, was much higher than the $29,221.00 market value stated in the judgment. Whether or not the trial court could have reached that result by applying a rate of depreciation that would be within the range of depreciation rates mentioned in the testimony of the expert witnesses against a cost of replacement that would be within the range of the replacement costs mentioned in the testimony of the expert witnesses is immaterial herein, since the defendants have not filed a cross-appeal and the plaintiff is not prejudiced by a purchase price that is lower than it might have been under the competent evidence.

Under the express provisions of 22 O.S. 1961, § 1068, no judgment shall be set aside or new trial granted by any appellate court of this state, in any case, civil or criminal, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. And, 12 O.S.1961, § 78 provides that the court,

in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party, and that no judgment shall be reversed or affected by reason of such defect or error.

From an examination of the entire record in the present case, we cannot say that the error alleged in the plaintiff's first proposition, if error, has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right of the plaintiff.

Particularly since there is nothing in the record to indicate that the trial court paid any attention whatsoever to the letter in question, this same statutory "harmless error" doctrine also disposes of the plaintiff's remaining proposition that the trial court erred in admitting in evidence, over the plaintiff's objection, a letter dated April 30, 1964, from the plaintiff to the defendants, in which the plaintiff offered to purchase all of the defendants' right, title, interest and estate in and to the building involved herein, including the leasehold covering the land upon which the building is located.

The plaintiff does not contend that it is not obligated, under the lease agreement and supplement thereto, to continue paying the agreed rentals in the event its purchase of the building, under the option in question herein, is not completed, but as mentioned above, it attacks the money judgment of February 3, 1965, only to the extent that it is based upon the judgment of January 6, 1965, fixing the purchase price of the building and allowing the plaintiff thirty days within which to pay the amount so fixed.

The trial court's judgments of January 6, 1965, and February 3, 1965, are affirmed.

IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, BERRY, and McINERNEY, JJ.

HODGES, J., dissents.

DAVISON, J., not participating.